and the case just argued will be submitted. And we'll proceed to hear argument in the next case on calendar for this morning, which is 24-5130, Enrique Zacarias Diaz v. D. Loya. And we will hear first from Mr. Nichobo. Did I pronounce that correctly? You got it perfectly. All right. Great. Thank you. You may proceed. Thank you, Your Honor. May it please the court. I would like to reserve three minutes for rebuttal. So, my client, Mr. Enrique Diaz, is imprisoned in Eastern Oregon, where he alleges that correctional staff called him the same racial slur over and over and over again. He testified below that when he tried to file a grievance for the first of those incidents, as required by the Prison Litigation Reform Act, he was, quote, ignored for months, for three months. He also testified that when he tried to file a grievance and when he ultimately obtained, tried to obtain the officer's name, well, we now know that name corresponds with nobody that actually works at that prison. And the officer didn't have a name tag as well. And the officer, that's correct, Your Honor. The officer also was not wearing a name tag, at least taking all facts and inferences in favor of the plaintiff as required, the officer was not wearing a name tag during this entire instance. So what, from your client's perspective, could he have done to exhaust as to at least that actor? I know there are other guards at issue. Your Honor, he, the process was effectively unavailable to him. There's nothing he really could have done to exhaust during this time frame, and that's true for a number of reasons. First, as you noted, Oregon law requires him to identify the specific officer who— Did he know that? Did he know that at the time? Because we know he would have known it after because there were other grievances later that were denied for that reason, but at the time that we're talking about the Douglas incident, did he know that he needed to name the officer as part of the grievance? That's the record below. If you look at ER 29, that's Mr. Diaz's declaration. He says that he was trying to file in May 2022, but he says he couldn't do so and he ended up filing late because he couldn't identify the officer's name. So I think the only inference you can take from that is that during this three-month time frame, what he was trying to do was figure out, who is this officer that had called me the racial slur? Is there, so the other thing I'm trying to think about here is, is there some sort of diligence overlay in this kind of, because this makes sense, right? There's these administrative requirements that I have to meet to do this, to file my grievance, and I'm having a struggle meeting one of them or whatever. Is there a diligence overlay in the sense of, somebody could just say, well, I don't know his name. I throw my hands up, I don't know his name, and five years later, I'll file my grievance when I happen to come upon his name, right? I understand those aren't the facts here, but I'm trying to figure out, what is his obligation to figure it out? I think certainly if he's going to come into court later on and say that the process was unavailable to him, he can't just say that I didn't personally know it. He has to show that he, I do think there's some diligence overlay. He has to show that he tried in the past, that that path was blocked him. But that's what we have here. So what are the facts that show that he tried and his path was blocked? I think those are, again, in ER 29 in Mr. Diaz's declaration. He says that he was being ignored for months. A reasonable inference from that is that he was attempting to do something during that time frame. He also says that the officer wasn't wearing his name tag for months. Again, I think a reasonable inference from that is that he was trying to identify the officer's name. The problem I have is that even if you can get past all of the stuff on the Douglas one, and you excuse the untimeliness, you excuse everything else, and even if you combine that with the other two as really treating it as one claim, when you get to the four claims pending rule, I don't see that that's going to cure that problem. How many claims do you have pending at the time when the four claim rule was invoked? For this first Douglas incident in August, Your Honor? Well, they're all submitted, the three of them. What was the time frame in which they were submitted? So Mr. Diaz submitted- Not the date of the underlying incidents. When were they actually submitted? So Mr. Diaz submitted the first incident in August, I believe it's August 23rd, 2022. That was for the May 22, that's the day incident. So August 23rd, the next one? August 29th is when he filed the next one. All right. And then the third? The third one, he did not- He didn't file at all. That's correct. That's right. He didn't file. Okay. But at that time in late August, how many did he have pending? By the time he filed the Douglas incident, that was the sixth complaint for that month. So he was over the four grievance limit at that point. Right. But how many did he have? There's two rules. You can only have four per month, and you can only have four pending. How many did he have pending? I don't believe that ODOC tells us exactly how much he had pending, but they did tell him that he was over that four pending limit. Okay. I mean, because he had a number of other things pending, including for things like, I need a snack, I would like the staff to change the channel more often, and the office had turned out the lights too soon. So I mean, this seems like exactly the kind of grievance filing that the four claim rule is designed to prevent. I mean, this is someone who is abusing the system by filing trivial things in large numbers and clogging the system. And then now you claim, well, this is the one that really counts, but he's used up his four on the lights and the TV. Let me make two points about that, Your Honor. First, I think that makes it all the more important that he was actually, that he would have been able to file this grievance in May. The relevant part of Mr. Diaz's theory with respect to exhaustion is this. This was a May complaint that should have been filed in May. It only ended up being filed in August because of the state's conduct. That's what makes this case like Eaton from our perspective. In Eaton too, you had a four grievance limit, and in Eaton as well, you had a plaintiff who you could say was a serial filer because he had gotten over that four grievance limit. But what this court had said in Eaton is that, well, if it's the state's conduct that's maybe causing these complaints to pile up in any ways, then if the state's causing the procedural denial, then we're in Ross Category 3, where you have a situation where the state is in some way thwarting the inmate's ability to grieve. And that's the theory that we're— Couldn't he have withdrawn some of these? You know, I won't worry about the TV and the lights because I now care about the—so I'll withdraw those and now use this slot as one of the four. He could have done that, right? He could have withdrawn, and that would have solved perhaps the active grievance limit. It would not have solved the monthly grievance limit. Right, but they're cumulative. You have to solve all the problems. And that's my point, is you may be able to solve the problem of May versus August, but you can't get past the problem that he's already clogged the system with four, you know, trivial ones. Well, Your Honor, at first I would— And he could withdraw those. I would first dispute the fact that these other grievances are necessarily trivial. That's—if you look at—I believe you're looking at ER 66 and 67. That's the grievance history where it's—so is that. But if you actually go and look at those grievances, oftentimes what's actually being alleged is quite different than how the prison characterizes it. A good example of that is even in the grievance that's with respect to Mr. Douglas that's here, that's at issue, there's no mention of discrimination, I think, if you're looking at ER 66 or 67, there's no mention of discrimination in how the state characterizes that complaint. It's just, well, I want him fired for unprofessional conduct. But when you actually go look at the grievance, what he's saying is—  No, that's right. Those are the serious ones. But, you know, he files the—one of the ones at issue here on the 29th. But he has four others, actually five others, on the same day. The sink needs fixed in cell. Food needs to be dated when made. The hot water is too hot. You know, so he's using up his slots on other things. And how are you going to get this down below four? Even if all this May stuff goes away. Your Honor, he can't get it down below four. But that, to me, is exactly why it was so important that he should have been able to file this May grievance in May. This is a May complaint. It should never be in this August scenario where you have all these other complaints. And in May, Your Honor, he actually—I mean, to some extent, it's kind of a miracle. This guy is a guy that files a lot. But in May, he actually had capacity. If you go back and look to the May grievances, had he filed it then, it actually would have sailed through. So—and the reason why he ends up filing in August, and this is our critical point, the reason why he ends up filing in August is only because it takes him months to identify this prison guard's name. And that's the state's own conduct that's forcing this all to happen in August, Your Honor. I mean, I have a related question, I guess, in that, I mean, are you aware of any authority that sort of upholds this kind of a frequency limitation? Because it's easy to point to the facts here and say, oh, we need a rule like this because this guy is filing all this seemingly frivolous stuff. But what if you had somebody who, like, had legitimate constitutional violations in a short period of time in a series? And I'm just curious, like, has any court said that this kind of a limitation is just inherently valid? I looked into that, Your Honor. That's one of the arguments we wanted to make. There's an unpublished case in the Eleventh Circuit—I'll have to get the exact site for you—where they looked at a similar grievance limitation rule, and they said that the prison's ability to set these grievance limits without more does not run afoul of the Prison Litigation Reform Act or any constitutional remedies. And so—and here, in this case, obviously— But certainly, I mean, you know, if we have a really bad prison with a really rotten prison guard, and he's beating someone every day, then it—you know, if you get to five with something like that, that's going to look a lot different from a constitutional point of view. You'd agree with that, obviously. I would agree with that, Your Honor. I would. I think here Eaton did address the same rule, this four grievance rule here in Oregon, and there wasn't any indication from the court that there was a problem with the rules. My point is, if you look at the array of August's complaints, this is in the heartland of why the four grievance rule is put in place and why, in that respect, it would not be constitutionally problematic. We're not bringing a facial challenge to the four grievance rule for that reason. What we are arguing is that there is still something in Mr. Diaz's particular case that may have rendered these generally available remedies effectively unavailable to him in that time frame, and that's the fact that there are tribal—there are disputed questions of fact as to whether the prison itself was engaged in any machination or misrepresentation, which puts this— But do you—again, I guess I get back to the fundamental question. Do you dispute that he could have withdrawn enough of these other August grievances to pull the number down below four and failed to do so? Absolutely, I dispute that, Your Honor. He could have—had he withdrawn—let's play that out. It's August, and he files this. Could he withdraw other complaints? He could potentially withdraw complaints to get it under the four active grievance limit, but there's nothing he can do about the fact that the grievances have already been submitted that month. There are different requirements. There's an active grievance limit, and then there's a monthly submission cap. And withdrawal on the monthly submission cap can't be cured by—I mean, if you file four, the four filed per month can't be undone by withdrawing them? I don't see anything in the rules that suggest that you could, Your Honor, that that could be the case. And second, another problem is he still hasn't correctly identified this person's name or correctly identified this officer. So even in this scenario where, let's say, it's withdrawn and this grievance becomes procedurally proper for that reason, this is a dead end. This is the exact type of dead end that the Supreme Court, as explained in Ross, does not need to be pursued. He isn't—to this day, we don't know who this officer is. ODOC's counsel admitted they don't even know who this officer is. That's a dead end, Your Honor. Do you have some time for rebuttal? Yes, Your Honor. All right. Thank you, counsel. Thank you very much. All right. We will hear next from Ms. Naito. Did I pronounce her? Naito, Your Honor. Naito. Okay. You may proceed. Good morning, and may it please the Court, Kirsten Naito on behalf of ODOC and the State Defendants. The question here is whether a plaintiff may be excused from exhausting his first grievance because no remedy was available, but the record demonstrates that additional remedies were available and this Court should affirm. I'd like to start with the timeline here and just in defendant's view, a plaintiff is incorrectly reading the record when he suggests that he could not remedy the procedural violations in August. What's your position? And he said that withdrawing to get below the four pending would work, but it wouldn't work for the four per month. Is that correct? What does the rules say about that? So I don't think the rules expressly say that if you withdraw to reduce the number under four, you can then meet the monthly limit. But in this case, what we do know is that the plaintiff here filed seven grievances on August 23rd, including some of the ones that your Honor has already pointed out, and that on August, shortly thereafter, I believe the same day, the grievances, including the issue here, were denied for those procedural reasons. Because the rules permit an adult in custody to refile that grievance within 14 days of the initial denial, a plaintiff here could have refiled this grievance the next month. Plaintiff would have had plenty of time within that 14 days and would not have been bumping up against that four grievance limit. Is it in the record that he would know that? So here we do have in this record that plaintiff attended the grievance procedure training in, I think, multiple times, but definitely in April of 2022. Plaintiff had withdrawn grievances in the past. And refiled them? That I don't know that plaintiff refiled them. But there is nothing in this record to indicate that plaintiff was unaware of the rules. And I think the record— Anything in the record that suggests that he had ever refiled one after an initial procedural denial within 14 days, as you're positing? Not that I am remembering off the—right now. I would need to go back and probably reread all of those grievances. But what I will say is that, you know, we know that plaintiff could have, you know, refiled that grievance within the next month because plaintiff did have a grievance that was accepted in September. If he refiled it, would he have known the identity of the guard at that point? So at that point, he could have refiled—he would have, you know, to his knowledge and even to his knowledge, you know, when he got into the district court, the identity of this prison guard was J. Douglas. And you know, at that point, that issue could have been brought to his attention and to the attention of defendants. But you—the record is that it's actually not Douglas, right? That that's not a person? That is—that is correct. And, you know, and defendants have not been able to find that person. But I think that issue illustrates why we have the grievance procedure and why this court has—this court and the Supreme Court has said that, you know, this type of administrative process is important in developing these types of claims so that they can be addressed closer in time so that the record can be developed around those issues. So the refiling process that you've just described, there's also a deadline, right? Like you have an incident and then you need to grieve it within a certain period of time. So that refiling process, does that avoid any statute of limitations problems? The 14-day problem? So let me be clear. As to this grievance, you know, filing from May 22nd in August, that is going to be beyond the timeliness and refiling the grievance within 14 days would not excuse that untimely filing. Right. But if—I'm just—okay. So if something is—if you file it and you have too many going on, you filed too many that month, but it would have been timely, and then you get denied for that frequency problem, but then you wait and you refile it in 14 days to overcome that problem, but now it's untimely. My understanding from reading the rules is that that would excuse that 14-day timeliness issue because you had filed the initial grievance within the 14 days. So that is the way that I read and understand the rules that we're dealing with here. So how many did he have pending at the time that these were denied, these—the two that he did file? So the—so at the time, on August 23rd, again, the record shows that he filed seven grievances. The first four were actually denied for other various procedural defects, and the final three were denied in part because of the number of grievances he had filed on that one day. And under the rules, an active grievance is one that is, you know, that is filed and then is within the limitation period with which it can be refiled. So the, you know, the number of grievances, the way that I read the record that he had when he filed the May 22nd incident was he had four pending, and he filed an additional three that day. On the 29th, you know, I think at that point he had, you know, he was still up against the number that he had already filed that month, and so—and I don't have the exact list on me, but— Had he been denied for filing too many at a time prior to August? The—so the record shows that he had filed between 40 grievances, I think in between April and August, and I apologize that I may be misremembering that. The chart shows he exceeded the limit in February. I mean, if you just—not the pending limit. Right. But the monthly total, he filed seven or eight in February, and at least a half dozen in March. Right. My question is more, was he denied for the reason of filing too many at a time? Because if in prior months he was exceeding that procedural bar and not being denied for that reason, then what do we do with that? I apologize. I don't know the answer to that question. I would, you know, direct this Court to the—to the exhibit that Judge Collins was looking at in terms of the number. But to— But this doesn't give the—either the denial date or the grounds for the denial, and that's Judge Forrest's question. Oh, okay. So the, you know, Exhibit 10, which is also in the record, does contain all of the grievances, does contain all of the denial reasons, and I apologize that I don't have all of those in front of me. But the full for this chart? For that whole chart, yes. So Exhibit 10 has, including the seven that I, that I have specifically looked, you know, the seven that were filed on August 23rd, which were, you know, returned for the untimeliness reasons, it also contains, I believe, all of the grievances that he filed before that. So this Court has that information. The District Court had that information in front of it. Can we—would you address your opposing counsel's argument that what we should really do is we should look back at May, when, if he'd had the information he needed to file the grievance closer to the time that the incident happened, he wouldn't have had this frequency problem. Why isn't that the right way to look at this? So two answers. First is that the, his denial, the denial of his grievance in August for the May 22nd incident was not based on, was not based entirely on the timeliness. That was referenced in the denial, but that rule permits an adult in custody to explain why the grievance was not timely filed. So that, you know, there's nothing in this record that would preclude him from obtaining relief. Now, as to the name of the official, of the officer, you know, the, the reason that this Court should not look at it kind of in that backward glance, or sorry, backward looking, is that, again, that was not the reason that this was, that this was denied and that was— But it was a rule, right? I mean, it is a rule. Correct. He was denied on other grievances on that basis.  And so it doesn't seem unreasonable for us to think, you know, if he didn't have that information closer to the time of the incident, that the fair implication would be if he had filed his grievance, it would have been denied for having that piece of information missing. So that, that kind of interpretation would, would basically permit, you know, permit ASCs to circumvent, you know, these procedural rules by delaying and, and kind of, and, and filing these late claims and, and the, the PLRA, you know, requires exhaustion and under Woodford requires proper exhaustion. And so that's why, you know, this, you know, and— It's a bit like having it both ways, it seems, right? Like the prison has a whole long list of rules. Some of them are fairly complicated. And you're saying in this context, well, he should have just ignored them and filed anyways and seen how it was going, because we probably would have given him a pass on the rule or something. Like, how, I don't understand how we're supposed to look at that, because we have evidence in the record that the prison wasn't giving a pass on many of these rules and other circumstances. So why should we think that it would have earlier? Oh, I don't, I don't think that this court should assume that, that, that the, that defendants would have given him a pass on the identity. I think what, you know, what defendant's position is in this case is that when he filed his grievance in August, you know, the, the reasons for the denial were that he had filed more than four in a month and he was beyond the four grievance limit. And he did not explain why his grievance was untimely. And so, you know, the, the, the defendants didn't even get to the identity of, of the person in those grievances and, and plaintiff here has not identified how he would get around and, and how he would have exhausted those claims on that basis. I thought you said that, um, he, you know, for the four timeliness, you know, four pending that that could have been refiled within 14 days. Yes. And bring it into today. That's not mentioned in the explanation. I would have thought that would be something that would be said in the denial that this is denied because you're over the limit, but you could file, refile within 14 days if that gets you into September and then, you know, you're, but there's nothing to that effect. So it's true that that's not expressly set out in the denial, but that is provided for in the rules that a, that a procedural defect can be cured. And that's why, you know, the rules do not permit an appeal from a denial based on the, these kinds of procedural defects. The, the grievance is returned to the AIC and they are given the opportunity to, to remedy that. Um, and, you know, again, the record here, you know, and, and it's undisputed that, um, this AIC had attended the training on the grievance process, um, had utilized the grievance process in the past and, and, and plaintiff did not at any time in the, before the district court assert any kind of claim that he, that that process, he was unaware of the process or the process was unavailable to him, such as to render, you know, a remedy unavailable, you know, the way that, um, it was in, in other cases. If we, sorry, go ahead. Do you agree that given our ruling on the prior appeal, that we should treat this pattern and practice claim as essentially one grievance and not three? Um, so I, I, I think the, um, the important thing is here is even if the court does treat it as one grievance, plaintiff still needs to, you know, get over the exhaustion on this May 22nd claim, which, which plaintiff cannot do. So even if the court does treat it as one, the, the... Suppose he, suppose we disagree. Suppose we think he can get past the May 22nd and then the question is, can he treat it as one? And then does that get us within or under four? So my, my question on the second one is, do you agree? Because we basically said, I mean, reading it in context, that each of the three claims individually didn't state a claim, but if you view the three together as a pattern, that's a claim. So he basically needs the three pieces in the pattern, but why isn't that one claim? I mean, if you, if you have run a prison where all the guards engage in multiple acts of harassment and create a pattern and you say, aha, but there were five guards who harassed you and now, you know, you've five claims and I mean, surely that can't be the way this runs. No, I agree. I think under the facts of this case, it's a little bit different than the scenario that, that your honor just suggested. And that's because the, the record here is we have this plaintiff, this AIC, you know, filing a grievance for the May 22nd incident. And then a few days later filing a grievance for, I believe the August 26th incident and, and those two could perhaps, you know, at that point, you know, had they been properly accepted you know, put, put the department on notice. But if, if the, if a, if an AIC is alleging a pattern in practice, you know, grieving one incident is not going to be sufficient to put the department on notice that there is a, a kind of prolific problem, a continuing problem. And so the, the purposes of the exhaustion requirement are not served under that, under that scenario. This is very different than the cases where this court has, you know, permitted that continuing violation. Doctor, I can't, I'm well out of my time. That would suggest, you know, if, if we're asking questions and we keep going, if, if you don't have the pattern in practice until we get to three claims, then maybe you don't have the claim until you get to three. And so maybe the May thing just doesn't matter because you need the pattern. And so the last one is when you have the single claim and so there's no timeliness issue and then it's just the issue of four. And then the question is, does getting this down to one claim is, are you below four at that point? Or are we still clogged with four others over the bar of soap, the TV and the lights? I believe my, my, the way that I read the record is he would, this, this AIC would still have the problem of the four pending because that, the last grievance was also filed in August and had, you know, exceeded the number for that month and, and that were pending at that time. Okay. All right. Thank you. Thank you, counsel. All right. We took your opponent over time, so I'm going to give you the three minutes you had asked for. All right, Your Honor. Thank you very much. So, just to clarify the timeline again, Mr. Diaz cannot grieve in May because he reasonably believes he has to identify the identity of this officer and he can't do so because he's being ignored. So May is foreclosed from him. Then we get to August. He cannot grieve in August, Judge Collins, because of the monthly cap. And I want to read the rule to you exactly. It's Division 109 at Section 215, Subsection 2, an adult in custody may not submit more than a combined total of four initial grievances and discrimination complaints per calendar month. And that's all we have. So, but the problem here, and this, I want you to focus on this because I think it's, it's really an important point. The first of the two grievances at issue, he files on August 23rd. That is his sixth for the month of August. And among the four are, I wanted three bars of soap, the lights were turned off too soon, the channel needed, on the TV needed to be changed more often, and I need a snack. So we've already clogged the system with four trivial ones before we get to this under any count. I, why don't you just lose for that reason alone and nothing else matters? Because he never would have been, because it's the state's conduct that led to him being in that situation where he's trying to file in a month where he's already clogged. He's never- It's his own fault that it's clogged. He's complaining about TV and bar of soap and lights and, and, and silly stuff. And then he has a serious claim and guess what? Maybe you shouldn't, you know, you know, play games with the system this way. But Judge Collins, it's the state's fault that he's having to file in August at all. And that's what, that's what makes this case like Eaton. If you look at Eaton, you have a similar situation where you have a prisoner who filed a lot of grievances. He was over the limit. But what Eaton said is that if the state is in part thwarting the grievance, the inmate's ability to grieve, then that brings us into Ross Category 3. And that's exactly what we have here. Yes, you're right that he did file too much in August, but this was not an, this is, this isn't, this is a May complaint. It's never should have been in August. This court in Albino, the en banc court said, if there's a single disputed question of fact with respect to exhaustion, then the proper procedure is you deny summary judgment and you promptly hold an evidentiary hearing because this is a threshold issue. Then the case proceeds from there. There are a number of disputed questions of fact here, your honors. And so the right procedure is that you don't have to make a determination once and for all. You just deny summary judgment. You send it back to district court to hold that evidentiary hearing. And we get to the bottom of questions like, why was he being ignored? Who is this? Who is this officer? Why was the officer not wearing his name tag? All disputed questions of fact, your honor. I have one last question. If we disagree on the continuing violation theory, and we think that only this Douglas incident might survive, is that enough for you to get, to keep going? It is, your honor. I mean, if, if you disagree on the continuing violations theory, if you disagree with the previous panel that this is really just one claim, such that exhaustion for one, I think would suffice for exhaustion for the others, well then, then we're in the scenario where we were before the first panel ruled, where you still have three different lawsuits. And so, you know, the suit against J. Douglas and ODOC as a named defendant there.
judges: COLLINS, FORREST, Fitzwater